MARK B. HIGHLAND, Plaintiff-Appellant, v. EUGENE STEVENSON, Highway Commissioner of La Salle County, *et al.*, Defendants-Appellees (Vincent A. Dettore, Highway Commissioner of Ottawa Township, *et al.*, Defendants).—MARK B. HIGHLAND, Plaintiff-Appellee, v. EUGENE STEVENSON, Highway Commissioner of La Salle County, *et al.*, Defendants (Vincent A. Dettore, Highway Commissioner of Ottawa Township, *et al.*, Defendants-Appellants).

Third District Nos. 3—86—0063, 3—86—0126 cons.

Opinion filed March 20, 1987.

Sorokas & Barton, of Blue Island (Michael Sorokas, of counsel), for Mark B. Highland.

Michael T. Reagan, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle, for Vincent A. Detorre and Township of Ottawa.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellees Eugene Stevenson and County of La Salle.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This case involves two separate appeals which have been consolidated. The first concerns plaintiff-appellant's (Mark Highland) appeal of the trial court's summary judgment dismissal of one of the defendants. The second concerns the remaining defendants-appellants' (Vincent Detorre, highway commissioner of the township of Ottawa and the township of Ottawa) appeal of the trial court's decision to allow plaintiff to voluntarily dismiss the cause of action and refile within one year under section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009).

On May 8, 1979, the plaintiff, Mark Highland, sustained serious injuries in a collision on North 2803 RD road in the township of Ottawa when the motorcycle he was driving collided with a pickup truck. The accident occurred at an approach to a bridge, which, in a study of alternatives performed in 1974, it was determined that the most feasible solution to the danger posed by this particular spot in the roadway was to construct a new viaduct to replace the bridge.

The main source of controversy in plaintiff's appeal (the first appeal) concerns a joint petition presented by the county of La Salle and the township of Ottawa to the Illinois Commerce Commission (ICC) to solicit funds for the proposed new viaduct and the order handed down by the ICC in response to the joint petition. On January 19, 1976, the then county superintendent of highways, Eugene Stevenson, attended a hearing on the petition and gave testimony under oath on the substandard qualities of the bridge and approaches to the bridge on North 2803 RD road. On March 10, 1976, the Illinois Commerce Commission issued an order regarding the proposed viaduct. The order stated, among other things, that:

> "IT IS FURTHER ORDERED that the joint Petitioners shall proceed immediately with the necessary plans for construction of said viaduct; this structure is to be completed within three (3) years from the date of this order.
>
> IT IS FURTHER ORDERED that the existing grade separation be and it is hereby closed and abolished and joint Petitioners shall barricade or otherwise remove approaches to the old structure so as to prohibit its use by the public, said closure

to be coincident with the opening of the new viaduct structure.

IT IS FURTHER ORDERED that upon completion of the viaduct hereinbefore permitted the Township of Ottawa in La Salle County be, and it is hereby required and directed to maintain the entire viaduct structure at its expense, except damage occasioned by railway derailments, accidents or collisions caused solely by the operations of the railroad for which the railroad shall be responsible for the expense of the repairs."

The new viaduct was not completed within three years as required by the ICC order of March 10, 1976. The injuries sustained by the plaintiff, Mark Highland, occurred on May 8, 1979, approximately three years and two months after the ICC order.

As a result, plaintiff alleges that the superintendent of highways of La Salle County, Eugene Stevenson, and the county of La Salle were guilty of negligence and wilful and wanton misconduct in supervision and control with regards to maintenance, repair and design of the particular roadway in question. The trial court granted defendants' motion for summary judgment, stating that there was no issue of material fact and that the defendants were entitled to judgment as a matter of law. We affirm the trial court's decision.

■ Plaintiff-appellant argues that the ICC order of March 10, 1976, confers jurisdiction upon the superintendent of highways of La Salle County and the county of La Salle. In particular, that the order referred to both the county and the township as joint petitioners, thereby obligating the county to take responsibility for the maintenance, repair and construction of the grade crossing. Further, that the ICC order was more than a request for advice under section 5–205.3 of the Illinois Highway Code (Ill. Rev. Stat. 1975, ch. 121, par. 5–205.3), and created a duty on the part of the county to take affirmative steps to insure that the order was complied with.

There is no dispute between the parties that the road in question is a township road. Under section 6–101 of the Illinois Highway Code (Ill. Rev. Stat. 1975, ch. 121, par. 6–101), "Roads which are part of the township and district road system are under the jurisdiction of the several road districts in which they are located, subject to such supervision by the county and the Department as is provided in this Code." Moreover, section 6–201.7 (Ill. Rev. Stat. 1975, ch. 121, par. 6–201.7) makes maintenance of township roads a responsibility of its highway commissioner. See also *Bentley v. Saunemin Township* (1979), 77 Ill. App. 3d 598, 396 N.E.2d 285.

A township may request in writing advice from the highway commissioner as to the best methods of construction, repair, or mainte-

nance of township and district roads. (Ill. Rev. Stat. 1975, ch. 121, par. 5—205.3.) We do not feel, however, that the presence of Eugene Stevenson at the ICC hearing or the joint application for State funding is sufficient to apply section 5—205.3 or any other section of the Illinois Highway Code which gives the county superintendent of highways the power to direct the township highway commissioner as to the proper maintenance of township roads.

Here, the county appropriated funds to the township for the construction of the grade crossing and attended, by way of Eugene Stevenson, an ICC hearing to acquire State funds. We do not consider this sufficient to confer jurisdiction upon the county of La Salle over the particular township roadway in question.

The second appeal was brought by the defendants-appellants, Vincent Detorre, highway commissioner for the township of Ottawa, and the township of Ottawa from the trial court's granting of plaintiff's (Mark Highland) motion for voluntary dismissal without prejudice and refusal to hear defendants' motion for summary judgment prior to such voluntary dismissal.

The relevant facts are as follows. The accident causing plaintiff's injuries occurred on May 8, 1979. Two and one-half weeks short of two years later, plaintiff filed this lawsuit. At that time Marilyn Barton and Michael Sorokas were plaintiff's attorneys of record. As the case progressed, Jerome Mirza & Associates entered the case as additional counsel for the plaintiff, but Barton and Sorokas remained counsel of record. The case was set for trial four times in the circuit court of La Salle County, the last two settings being for dates more than 4½ years after the filing of the complaint.

Approximately two years prior to the third trial setting of October 28, 1985, the trial judge ordered both parties to disclose the identity of all expert witnesses who were going to testify at trial. In conformity with that order, plaintiff disclosed a road-design expert. Counsel for plaintiff later advised counsel for defendants that the plaintiff had decided not to call that particular expert or any other expert as a witness.

On October 11, 1985, the defendants filed their motion for summary judgment, asserting that the plaintiff was unable to establish that there were genuine issues of fact as to several elements of the plaintiff's case, including the element of proximate causation between the design of the road and the accident. The motion was to be heard October 22, 1985. On that date plaintiff filed documents in opposition of the motion and the matter was continued to October 24, 1985. At that time, Jerome Mirza & Associates and Marilyn Barton filed their

motion to continue the defendants' motion for summary judgment and jury trial. The motion indicated in part that counsel desired additional time to allow Mr. Mirza to withdraw and to allow plaintiff an opportunity to obtain other counsel. Mr. Mirza was allowed to withdraw and the motion for summary judgment was continued to November 27, 1985. The matter was further set for trial on February 3, 1986.

On November 26, 1985, Marilyn Barton and Michael Sorokas moved to continue all pending matters for a reasonable time to allow counsel to obtain and become familiar with the file that had been previously in possession of Mr. Mirza. The motion was granted and the hearing on the motion for summary judgment was again continued to December 27, 1985.

On December 13, 1985, plaintiff, by attorney Michael Sorokas, filed a motion for voluntary dismissal without prejudice pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009). The defendants filed their opposition to the motion, asserting the pendency of the motion for summary judgment and the great expense and effort which defendants put into the matter. Defendants asked that the court conclude the hearing on the defendants' motion for summary judgment prior to having a hearing on the plaintiff's motion for voluntary dismissal or that, in the alternative, the court exercise its discretion and deny the plaintiff's motion. Defendants also asked for certain fees and costs associated with the cost of out-of-State depositions and preparation of the motion for summary judgment.

The court determined on January 16, 1987, that in exercise of its discretion it would grant plaintiff's motion for voluntary dismissal without prejudice and not hear defendants' motion for summary judgment. Defendants' request for costs was denied.

■ Defendants argue that according to the rule pronounced in *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322, the trial court was obligated to hear defendants' motion for summary judgment before hearing plaintiff's motion for voluntary dismissal. We disagree. In *O'Connell*, the supreme court stated that its Rule 103(b) motion to dismiss with prejudice for failure to use due diligence in service of process must be heard before a plaintiff's motion for voluntary dismissal. The court stated that the reason for requiring the 103(b) motion to be heard first is that a discrepancy exists between procedural rules of the court and procedural statutory provisions and that the discrepancy is resolved within the framework of the Illinois Constitution. The Constitution allows the court to promulgate procedural rules to facilitate the judiciary in the discharge of its

constitutional duties. Therefore, "[W]here a rule of [the] court on a matter within the court's authority and a statute on the same subject conflict, *the rule will prevail.*" (Emphasis in original.) *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281, 492 N.E.2d 1322, 1326.

■ Appellants argue that a conflict exists in the present case between Supreme Court Rule 220 (103 Ill. 2d R. 220) and section 2—1009 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009). In particular, that to allow a dismissal without prejudice in this case will render Rule 220 nugatory because the plaintiff had made the tactical decision to not call an expert witness to testify and did not disclose an expert as required by Rule 220. However, within a week of trial, plaintiff changed his mind and then sought to voluntarily dismiss the case, in part to obtain an expert, and refile the case at a later date.

We are not persuaded that *O'Connell* is controlling in the present situation. In *O'Connell*, the court was dealing with a rule which, if not followed, would bar a plaintiff from bringing an action. Rule 220 does not work to bar a plaintiff from bringing an action if it is not followed, it merely prohibits a plaintiff from having experts testify at trial if they were not disclosed. In no way does Rule 220 cause dismissal of a plaintiff's case with prejudice. We note that had this case gone to trial, plaintiff would be barred from having expert testimony. Therefore, Rule 220 has effect and if plaintiff wishes to introduce expert testimony in a subsequent case, Rule 220 will require him to disclose such experts well in advance of trial. Therefore, since Rule 220 has effect and because it does not mandate dismissal with prejudice for failure of compliance, we are of the opinion that it is not in conflict with section 2—1009 of the Illinois Code of Civil Procedure.

■ Appellants also assert that the trial court abused its discretion by refusing to hear defendants' motion for summary judgment prior to hearing plaintiff's motion for voluntary dismissal without prejudice. We affirm the decision of the trial court.

In *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787, a trial was set for March 14, 1983. Pretrial motions *in limine* were filed by both parties and heard on March 9, and again on March 14, 1983. There were rulings in favor of both parties during the hearings on the motions. However, on March 14, 1983, before a jury had been selected, the plaintiff moved to voluntarily dismiss his case without prejudice under section 2—1009. The trial court allowed the motion for dismissal over defendants' objection. The Supreme Court of Illinois stated:

"At common law, the plaintiff could voluntarily dismiss without prejudice at any point before the judgment was returned. The legislature attempted to discourage vexatious suits by limiting the plaintiff's freedom, but only by preventing an automatic voluntary dismissal without prejudice after trial or hearing commenced. [Citation.] Any further limits on the plaintiff's common law rights should be enacted by the legislature, not declared by this court." 104 Ill. 2d 302, 307-08, 472 N.E.2d 787, 789.

The later *O'Connell* exception, with regard to Rule 103(b) motions, does not warrant an *in toto* change of the rule. In *O'Connell* the court was very specific in holding that Rule 103(b) motions must be heard prior to ruling on a plaintiff's motion to dismiss under section 2—1009. *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322.

Appellants assert, and we agree, that this court's opinion in *Dillie v. Bisby* (1985), 136 Ill. App. 3d 170, 483 N.E.2d 307, expands the rule by giving the trial court discretion to consider any defense motion which might result in a dismissal with prejudice prior to ruling on a plaintiff's voluntary dismissal motion. Accordingly, appellants assert that the trial court abused its discretion in this case by refusing to hear defendants' motion for summary judgment prior to plaintiff's motion for dismissal. As support, appellants cite the age of the case, the size of the record without one evidentiary hearing, the cost incurred with taking depositions and preparing for trial, and the plaintiff's last minute change of tactics to obtain an expert to testify at trial after the court's order for disclosure of experts.

We note that the trial court specifically mentioned it was exercising its discretionary power to hear the motion for summary judgment first, but allowing plaintiff's section 2—1009 dismissal.

We feel the trial court did not abuse its discretion in this case for the following reasons. First, although the case was on the docket for over four years and a huge record accumulated without any evidentiary hearing ever being held, we cannot attribute plaintiff's actions as the sole cause of the delay. The evidence indicates that this case was on the docket for over three years before the first trial setting. We assume that this delay was caused by the lengthy deposition process. Therefore, we cannot say the trial court abused its discretion because of the age of the case. Secondly, although the defendants undoubtedly incurred considerable expense over the course of 4½ years by way of depositions and court appearances, we do not feel that this is a basis for overruling the decision of the trial court. It must also be

true that the plaintiff incurred as much, if not more, expense than did defendants in pursuing this action. As stated in *Kahle*, the defendants do not control the progress of the case and "[w]hile it is unfortunate that the defendants have been inconvenienced, that sometimes happens in our adversary system." (104 Ill. 2d 302, 307, 472 N.E.2d 787, 789.) Third, it is certainly foreseeable that one possible purpose of a plaintiff's use of a section 2—1009 motion for dismissal is a change of tactics. As we stated earlier, Rule 220 requiring disclosure of experts is not rendered meaningless by plaintiff's use of section 2—1009. This case does not appear analogous to a case where plaintiff has not used due diligence in service of process and is subject to dismissal under Rule 102(b). Lastly, defendants have suffered no legal prejudice as a result of this dismissal.

For all of the foregoing reasons, the decision of the trial court is affirmed as to both appeals involved in this case.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.